IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01989-REB-KLM

CHARLES LEE KETTERING,

      Plaintiff(s),

v.

LARIMER COUNTY DETENTION CENTER, 2405 Midpoint Drive, Fort Collins, CO 80525,
NURSE HAUGE, in her official and individual capacities,
DEPUTY BERGESS, in his official and individual capacities,
DEPUTY HARRIS, in his official and individual capacities,
SERGEANT ESTERS, in his official and individual capacities,
CORPORAL CATES, in her official and individual capacities,
CORPORAL NAIL, in his official and individual capacities,
DEPUTY KERR, in his official and individual capacities,
DEPUTY VANDERSLICE, in his official and individual capacities,
DEPUTY SIMMS, in his official and individual capacities,
DEPUTY SANZONE, in his official and individual capacities,
DEPUTY HOONER, in his official and individual capacities,
DEPUTY MEEKS, in his official and individual capacities,
DEPUTY MOLL, in his official and individual capacities,
NURSE HOFFMAN, in her official and individual capacities,
LIEUTENANT RUSSELL, in his official and individual capacities,
LIEUTENANT FARABEE, in his official and individual capacities,
SERGEANT VANFLEET, in his official capacity,
DEPUTY GREGORY, in his official and individual capacities,
CORPORAL HARTEKER, in his official and individual capacities,
DEPUTY PUGLIESE, in his official and individual capacities,
DEPUTY MARTINEZ, in his official and individual capacities,
DEPUTY SANTOS, in his official and individual capacities,
DEPUTY ARMENTROUT, in his official and individual capacities,
DEPUTY SOMOYER, in his official and individual capacities,
DEPUTY TRAYLOR, in his official and individual capacities,
DEPUTY McHUGH, in his official and individual capacities,
SERGEANT DANIALS, in his official and individual capacities,
DEPUTY PURRIER, in his official and individual capacities,
NURSE UNKNOWN, in her official capacity,
NURSE BRUNTZ, in her individual capacity,
DEPUTY KIAHTIPES,
MAJOR DARLIN,

      Defendant(s).

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant Nurses Vicki Hoffman, R.N., and Hauge, L.P.N.'s Motion for Summary Judgment and Brief in Support** [Docket No. 216; Filed October 01, 2008] ("Nurse Defendants' Motion"); **Defendant Nurse Cathleen Bruntz's Motion for Summary Judgment and Brief in Support** [Docket No. 218; Filed October 1, 2007] ("Nurse Bruntz's Motion"); and **County Defendants' Motion for Summary Judgment and Brief in Support** [Docket No. 226; Filed November 1, 2007] ("County Defendants' Motion") (collectively, the "Motions"). Plaintiff, who was initially proceeding *pro se*, was given an extension of time to respond to the Motions after counsel made their appearance on his behalf [Docket No. 304]. Plaintiff filed a single response to the Motions on July 2, 2008 [Docket No. 308], and Defendants filed replies on July 22, 2008 [Docket Nos. 314-16]. The pending Motions have been fully briefed. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the Motions have been referred to this Court for recommendation. Having considered the pleadings and the docket in this case, the Court is fully advised of the issues. For the reasons set forth below, the Court recommends that the Motions be **GRANTED in part and DENIED in part**.

## I. Statement of Undisputed Facts and Factual Background

Unless otherwise noted, the parties agree that the following facts are true for purposes of resolving the pending motions. Plaintiff was incarcerated as a pretrial detainee at the Larimer County Detention Center ("LCDC") from June 27, 2005 to June 21, 2006.

*Declaration of Kettering* [#308-3] at 2. During his incarceration, Plaintiff suffered from dental pain caused by swollen gums, abscesses, and infections. *Id.* LCDC staff administered oral rinses to treat gingivitis that caused Plaintiff's swollen gums. *Nurse Bruntz's Motion* [#218] at 4. The oral rinses provided only temporary relief for Plaintiff's swollen gums. *Declaration of Kettering* [#308-3] at 3; *Response* [#308] at 21. Plaintiff asked to see his personal dentist, but his requests were denied. *Declaration of Kettering* [#308-3] at 2. The alleged lack of adequate care and treatment of Plaintiff's dental condition is one of the issues before the Court.

On September 5, 2005, November 8, 2005, November 26, 2005, and April 18, 2006 Plaintiff was involved in incidents which included extraction from his cell by LCDC staff and placement in a restraint chair, booking cell, or both [Docket Nos. 227-2 through -5]. The incidents which prompted staff's response, the level of force exerted against Plaintiff by staff, and the amount of deprivation that resulted to Plaintiff are contested by the parties. Defendant LCDC prepared a DVD showing portions of the incidents at issue in relation to the November 8, 2005 and November 26, 2005 extractions [Docket No. 229]. During the videotaped incidents, Plaintiff was periodically non-compliant with LCDC staff's orders, and both verbally and physically abusive to staff.

Specifically, on September 5, 2005, Plaintiff was upset over receiving what he perceived to be insufficient oral rinse. *Declaration of Kettering* [#308-3] at 4. He claims that in response to his complaints, he was taken to a booking cell by LCDC staff. *Id.* While en route, he claims that he suffered injuries to his arms and wrists as a result of the level of force exerted against him by staff. *Id.* He also claims that he was thrown to the floor of the booking cell and that his arms were twisted in an attempt to break them. *Id.*

3

On November 8, 2005, Plaintiff was extracted from his cell by the LCDC Special Emergency Response Team ("SERT") and placed in a restraint chair. *Id.* at 4-6. When the SERT team arrived at Plaintiff's cell, Plaintiff was brandishing a shard of a broken cup which he refused to relinquish to staff [Docket No. 229]. The video of the incident clearly shows Plaintiff refusing to comply with directions given to him by the SERT team leader. Plaintiff claims that the SERT team used excessive force to extract and transport him to the restraint chair, including shooting him with seven pepper balls. *Declaration of Kettering* [#308-3] at 4-6. Given the size of Plaintiff's cell and the number of individuals sent in to extract him, the extent of Plaintiff's injuries and the exact nature of the team's conduct are not clear from the video. After Plaintiff was placed in the restraint chair, the video ends. While in the restraint chair, Plaintiff claims that he was deprived of food, water, and the ability to relieve himself for a period of nineteen hours. *Declaration of Kettering* [#308-3] at 5. It is undisputed that Nurse Defendants injected him with an antipsychotic drug called "Haldol" during his confinement in the restraint chair. *See Nurse Defendants' Motion* [#216] at 2. Plaintiff also claims that he was covered in pepper ball chemicals while confined there. *Declaration of Kettering* [#308-3] at 5. When he was released from the restraint chair, he was placed in a "safety cell." *Id.* Plaintiff claims that the cell did not contain a mattress, sink, water, or toilet. *Id.* He claims that he was forced to lie next to his own waste and was covered in pepper ball chemicals, urine, and feces for a period of four to five days. *Id.* at 5-6. Defendants do not specifically address Plaintiff's allegations about the conditions of his safety cell in their Motions.

On November 26, 2005, Plaintiff complained to LCDC staff about his perceived lack of adequate recreation time. *Id.* at 6. The SERT team was sent to extract Plaintiff from his

cell.  When they arrived, Plaintiff was reading his Bible [Docket No. 229].  Although the video shows Plaintiff sitting on his bed and behaving calmly (as opposed to his behavior on November 8, 2005), the video also shows Plaintiff refusing to comply with the SERT team leader's orders.  When the SERT team entered Plaintiff's cell, Plaintiff claims that the force exerted was excessive, including that he was unreasonably shot with thirteen pepper balls.  *Declaration of Kettering* [#308-3] at 6.  He also claims that the team pushed his head into a cement wall and then stepped on his head.  Given the size of Plaintiff's cell and the number of individuals sent in to extract him, the extent of Plaintiff's injuries and the exact nature of the team's conduct are not clear from the video.

Finally, on April 18, 2006, LCDC staff confiscated orall rinse from Plaintiff's cell.  *Id.* at 6-7.  When Plaintiff complained, LCDC staff forcefully took him from his cell and put him in a booking cell.  *Id.*  Defendants do not address the level of force they used to extract Plaintiff from his cell in their Motions.  After placing Plaintiff in the booking cell, Plaintiff claims that staff struck him on the head and refused to give him a blanket.  *Id.*  Plaintiff contends that he tried to pull his t-shirt over him to stay warm, but that staff would not let him do so. *Id.* at 7.  He then claims that he was beaten unconscious, tasered in the abdomen, and received lacerations which caused blood to pool on the floor of the cell.  *Id.* He claims that staff then took his t-shirt and left him in the "freezing cold booking cell for approximately 28 hours" causing his toes, fingers and lips to turn blue.  *Id.* at 8.  County Defendants admit that Plaintiff was tasered, but only after he attempted to bite one of the staff [Docket No. 227-5].  They also contend that Plaintiff purposely urinated on the floor, threatened to kill staff, tore staff's clothing, and attempted to grab the taser gun.  *County Defendants' Reply* [#314] at 7.  They also contend that they offered him medical

assistance. *Id.* County Defendants do not address Plaintiff's contention that he was left without a blanket or the temperature of the cell.

## II. Procedural Background

Although the operative complaint contains twelve claims against various individuals, prior to resolution of the pending dispositive motions, the parties agreed to limit the number of claims and parties at issue. Pursuant to the Joint Stipulation of Dismissal filed by the parties on July 7, 2008, the parties agreed to dismiss Claims I, VII, VIII, IX & XI and all claims against Defendants Charles Robles, Patti Dean, Doug Rice, Jason St. Aubin, and Amy Wimmer [Docket No. 309]. The Stipulation was accepted by the District Court [Docket Nos. 310 & 311]. For the purposes of this Recommendation, the Court does not address any of the dismissed claims and has removed the above-named Defendants from the caption.

Pursuant to the District Court's Order [Docket No. 310], Plaintiff filed a Statement of Claims and Defendants Remaining After Entry of Order of Partial Dismissal [Docket No. 312]. Therein, Plaintiff acknowledged that Claims II, III, IV, V, VI & X remain. Although Claim XII was not voluntarily dismissed, Plaintiff inadvertently failed to include Claim XII in his list of remaining claims, and the Court therefore analyzes that claim on its merits. As to the remaining Defendants, Plaintiff requests that Defendant Nurse Bruntz be added to the District Court's case caption. To the extent that the operative caption in this case has not included Nurse Bruntz, this was a docketing oversight and has been corrected. Plaintiff also notes that Defendants Gary Darling and Santos Romero (referred to in the caption as "Major Darlin" and "Deputy Santos") did not file answers to Plaintiff's original complaint, and that Defendant Romero did not file an answer to Plaintiff's operative complaint. However,

both are included in the pleadings in support of County Defendants' Motion. Further, Plaintiff notes that Defendant Seth Hooper (referred to in the caption as "Deputy Hooner") was never served and did not file an answer regarding either complaint. However, Defendant Hooper is included in County Defendants' Motion. Finally, Plaintiff notes that Defendant Sheriff Alderdeen (Larimer County Sheriff) has never been served, did not answer the complaints, and is included in County Defendants' Motion. However, the Court notes that County Defendants argue on behalf of the Larimer County Sheriff that any claims made against him or the LCDC should be dismissed. For the purposes of the resolution of County Defendants' Motion, the Court considers Plaintiff's claims against Defendants Darling, Romero, Hooper, and Alderdeen.

### III. The Motions

Defendants Nurse Vicki Hoffman and Nurse Ann Hauge seek summary judgment in their favor as to Claim IV [Docket No. 216]. Claim IV asserts three injuries – the second of which is relevant here – namely the alleged injection of drugs against Plaintiff's will in violation of the Fourteenth Amendment (Claim IV(b)). *Complaint* [#114] at 7-8. Claim IV(b) appears to be the only claim that Plaintiff pursues against these Defendants. *Hoffman and Hauge's Motion* [#216] at 1. Nurses Hoffman and Hauge seek dismissal of Claim IV(b) due to the absence of any evidence that they committed constitutional violations, on the grounds of qualified immunity and due to Plaintiff's failure to exhaust his administrative remedies. *Id.* at 8-19. Plaintiff responded and alleged that he effectively exhausted this claim, that Nurses Hoffman and Hauge violated his Fourteenth Amendment rights, and that they are not entitled to qualified immunity. *Response* [#308] at 6-12. In their reply, Nurses Hoffman and Hauge specifically point to the absence of any federal precedent or facility

policy that they allegedly violated. *Hoffman and Hauge's Reply* [#316] at 4.

Defendant Nurse Bruntz seeks summary judgment in her favor as to Claims II and III [Docket No. 218]. Claim II asserts an Eighth Amendment violation against Nurse Bruntz for her part in allegedly failing to give Plaintiff the proper dosage of oral rinse for tooth pain. *Complaint* [#114] at 4-5. Claim III asserts an Eighth Amendment violation against Nurse Bruntz for her part in having him taken to the booking cell and assaulted by several deputies. *Id.* at 5-6. Nurse Bruntz seeks dismissal of Claims II and III due to the absence of any evidence that she committed constitutional violations and due to Plaintiff's failure to exhaust Claim II. *Nurse Bruntz's Motion* [#218] at 7-19. Plaintiff responded and alleged that he effectively exhausted Claim II. Plaintiff also attempted to expand the scope of Claim II against Nurse Bruntz and alleged that her conduct amounted to deliberate indifference to Plaintiff's serious medical needs in several areas. *Response* [#308] at 18-21, 25-26. In her reply, Nurse Bruntz takes issue with Plaintiff's attempt to expand the scope of Claim II against her to include anything beyond failing to provide the proper dosage of oral rinse. *Nurse Bruntz's Reply* [#315] at 3-5. She also argues that Plaintiff failed to allege a cognizable Eighth Amendment claim against her because Plaintiff failed to allege either a sufficiently serious objective injury or a subjective intent. *Id.* at 5-8.

The remaining Defendants (collectively, the "County Defendants"), seek summary judgment in their favor as to all remaining claims (Claims II, III, IV, V, VI, X, and XII). [Docket No. 226]. These claims allege various constitutional violations pursuant to the Eighth Amendment. *Complaint* [#114] at 3-6, 9-12. County Defendants assert several legal defenses, including the failure to allege personal participation by several Defendants, the lack of evidence that constitutional violations occurred, and qualified immunity. *County*

*Defendants' Motion* [#226] at 7-17. Plaintiff responded and alleges that issues remain regarding whether County Defendants' conduct violated Plaintiff's constitutional rights and that County Defendants are not entitled to qualified immunity. *Response* [#308] at 12, 18, 21, 27-28, 32. In their reply, County Defendants argue that despite comprehensive legal posturing, Plaintiff failed to articulate any material issues that are in dispute. *County Defendants' Reply* [#314] at 2-9.

## IV. Analysis

### A. Standard of Review

Defendants seek summary judgment in their favor as to all claims. Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the outcome could be decided in favor of either party. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it could reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of evidence to support the nonmovant's case. If this burden is satisfied, the burden shifts to the nonmovant to show the existence of a genuine dispute regarding a material issue. The nonmoving party must go beyond the allegations in its pleading and provide "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The factual record and inferences therefrom are

viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). However, the Court is not obligated to consider conclusory statements or testimony based on conjecture, subjective belief, or inadmissible evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

**B.    Summary Judgment Motions**

**1.  Preliminary Matters**

**a.  Exhaustion of Administrative Remedies**

As a preliminary matter, Nurses Bruntz, Hoffman and Hauge argue that Plaintiff failed to exhaust the claims asserted against them, in part, and is therefore barred from pursuing those claims herein. *Hoffman and Hauge's Motion* [#216] at 18-19; *Nurse Bruntz's Motion* [#218] at 16-19. County Defendants did not raise a similar affirmative defense, and the Court addresses this issue in relation to Claims II(b) and IV(b) as they relate to Nurses Bruntz, Hoffman and Hauge.[1]

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted at the facility level before a prisoner may challenge those conditions via federal complaint. Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA

---

[1] Although Nurse Bruntz also moves for summary judgment as to Claim III, she did not assert a specific failure-to-exhaust challenge as to that claim, and the Court does not analyze the issue herein.

and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, ___, 127 S. Ct. 910, 918-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on the Plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion. *Jones*, 127 S. Ct. at 921. Rather, the burden is on Defendants to assert failure to exhaust in their dispositive motion as an affirmative defense. As such, if the evidence presented creates a genuine dispute in Plaintiff's favor as to whether his claims were properly exhausted, the Motions must be denied.

Here, Plaintiff generally argues that the administrative grievance process should be viewed as unavailable to him due to (1) LCDC's prolonged and unreasonable delay or failure in responding to Plaintiff's grievances generally; and (2) the impossibility of complying with LCDC's grievance procedures given its various requirements. *Response* [#308] at 6-9. As to his first contention, Plaintiff argues that "the failure [of prison officials] to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Response* [#308] at 6-7; *see Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). As to the second contention, Plaintiff argues that the LCDC grievance procedures were written and carried out in such a way as to frustrate an inmates' ability to effectively exhaust them. *Response* [#308] at 7; *Declaration of Kettering* [#308-20] at 2-3. Plaintiff further argues that Defendants misrepresented to him his obligation to proceed with his grievances to their conclusion, such that Defendants should be estopped from asserting this defense herein. *Response* [#308] at 8.

The LCDC grievance policy sets forth a three-step grievance procedure by which an inmate can effectively exhaust his administrative remedies [Docket No. 217-12]. Plaintiff

11

was given a copy of the LCDC grievance policy and certified that he read and understood it [Docket No. 217-13]. The policy also notes that "Staff answers your grievance within 72 hours of the time it is received by them, excluding weekends and holidays" [Docket No. 217-12 at 3].

### i. Exhaustion of Claim II(b) (Nurse Bruntz)

Claim II can be summarized in two ways: (a) it is a general claim regarding County Defendants' alleged deliberate indifference to Plaintiff's dental needs; and (b) it is a specific claim against Nurse Bruntz for her failure to provide the proper dosage of oral rinse to alleviate his tooth pain. As to the latter alleged injury, Nurse Bruntz contends that Claim II(b) should be dismissed because Plaintiff failed to properly grieve any alleged injury relating to the oral rinse. The Court notes that on September 5, 2005, Plaintiff attempted to grieve his allegation that he was not given the proper dosage of oral rinse by an unnamed LCDC nurse [Docket No. 217-15 at 6]. However, one day after the grievance was submitted, the grievance was returned to Plaintiff for rewording [Docket No. 217-11 at 2-4]. Pursuant to the LCDC grievance policy, grievances that contain derogatory or offensive language may be rejected [Docket No. 217-12 at 3].

Plaintiff has not directed the Court to any evidence suggesting that Plaintiff ever attempted to regrieve this injury or reword his grievance in compliance with the policy.[2] Further, although Plaintiff makes unavailability, impossibility, and estoppel arguments in

---

[2] To the extent that Plaintiff directs the Court to review over 60 pages of grievances and find step 1, 2 and 3 grievances that may pertain to this injury, I decline to search the record for evidence that demonstrates a dispute in this regard. It is the litigant's burden to sufficiently demonstrate the presence of evidence supporting his claim. *See Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995); *Toth v. Gates Rubber Co.*, No. 99-1017, 2000 WL 796068, *8 (10th Cir. June 21, 2000) (unpublished decision).

relation to exhaustion generally, the Court finds that none of these arguments justifies Plaintiff's failure to exhaust his remedies in relation to his allegations against Nurse Bruntz contained in Claim II(b). The September 5, 2005 grievance was timely responded to within one day of its submission, it could easily have been revised to avoid the use of unnecessarily insulting language, and it does not contain any misrepresentation that would cause Plaintiff to believe that he had fully exhausted it. On the contrary, Plaintiff was fully aware of the grievance policy and his responsibilities to exhaust [Docket No. 217-13].

To the extent that Claim II(b) asserts an injury against Nurse Bruntz in relation to her alleged failure to provide the proper dosage of oral rinse, the Court agrees that Plaintiff has failed to put forth evidence to create a dispute as to whether he properly exhausted this claim. As such, the Court finds that Nurse Bruntz is entitled to summary judgment on this claim. Accordingly, I recommend that **Nurse Bruntz's Motion** be **granted** as Claim II(b). As Nurse Bruntz is the only named Defendant in relation to this claim, I further recommend that Claim II(b) be dismissed. *See infra* Part IV.B.2. However, as the remainder of this claim (Claim II(a)) relates to whether County Defendants were deliberately indifferent to Plaintiff's medical needs regarding his teeth generally, this portion of the claim is addressed on the merits below.

### ii. Exhaustion of Claim IV(b) (Nurses Hoffman and Hauge)

Claim IV(b) asserts that Nurses Hoffman and Hauge unconstitutionally administered antipsychotic drugs to Plaintiff. Nurses Hoffman and Hauge argue that Plaintiff failed to properly exhaust his administrative remedies as to this alleged injury such that summary judgment is required. In this regard, Nurses Hoffman and Hauge point to four grievances

13

filed by Plaintiff relating to the injection of drugs by them on November 8, 2005. None of the grievances were properly appealed beyond the second step of the three-step grievance process in place at LCDC [Docket Nos. 217-14 at 14, 217-18 at 6, 217-18 at 17 & 217-19 at 6]. Plaintiff does not dispute that he did not appeal his grievances; rather, as noted above, he argues that his failure to exhaust should be excused because (1) LCDC staffs' conduct rendered exhaustion procedures unavailable to him; (2) the LCDC exhaustion requirements were impossible to comply with; and (3) Nurses Hoffman and Hauge should be estopped from asserting this defense because of misrepresentations made by prison officials regarding exhaustion.

The Tenth Circuit has held that an inmate must appeal his grievance through all available channels to fully exhaust his alleged injuries; however, there is a recognized exception to the requirement to exhaust when procedures are not available, e.g, when an inmate has been prevented from filing a grievance or the facility refused to answer a grievance. *See Jernigan*, 304 F.3d at 1032). Nevertheless, the Court finds that Plaintiff's failure to exhaust Claim IV(b) cannot be excused on any of the grounds he asserts. The four grievances (three first-step grievances and one second-step appeal) submitted by Plaintiff in relation to the alleged unconstitutional injection of an antipsychotic drug were timely responded to by LCDC staff, and staff members who answered the grievances did so in a relatively legible fashion.

Further, in response to Plaintiff's argument that LCDC staff misrepresented Plaintiff's responsibility to exhaust his grievances, the Court notes that Plaintiff does not assert that he was told he was excused from the need to appeal to the final step of the grievance process in relation to his claim. An assertion by staff at the first stage of the process that

Plaintiff should seek "legal representation" cannot be reasonably construed to inform Plaintiff that he need not exhaust his claims further [Docket No. 217-18 at 17]. Indeed, Plaintiff did not interpret the LCDC response as an invitation not to seek review through the next step of the process because only a few days later, he filed an appeal of that response (and others) [Docket No. 217-19 at 6]. He did not, however, file an appeal to the third and final level of review. As such, I find that Plaintiff's conclusory assertions regarding the unavailability or impossibility of exhaustion, as well as his arguments that Defendants' alleged misrepresentations excuse his failure to exhaust, do not apply to the grievances at issue in this claim. Consequently, these general allegations do not serve to raise any dispute about whether Plaintiff properly exhausted this issue prior to pursuing it herein. *See Thomas v. United States BOP*, No. 07-1426, 2008 WL 2498049, at *3 (10th Cir. June 24, 2008) (unpublished decision) (holding that prisoner's conclusory and unsupported allegations regarding complications in exhaustion process did not create a dispute for purposes of summary judgment); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements . . . ."); *Sparks v. Foster*, 241 Fed. Appx. 467, 473-74 (10th Cir. June 19, 2007) (unpublished decision) (holding that inmate's claim that exhaustion was "futile does not excuse lack of exhaustion"). Because Plaintiff does not sufficiently dispute that he did not, in fact, exhaust this claim, I recommend that **Nurses Hoffman's and Hauge's Motion** be **granted**, and that summary judgment be entered in their favor as to Claim IV(b). As Claim IV(b), on its face, only asserts a claim against Nurses Hoffman and Hauge, I further recommend that Claim IV(b) be dismissed. *See infra* Part IV.B.4.b.

     **b.**     **Personal**    **Participation**    **of**    **Defendants**    **in**    **Alleged**

**Constitutional Violations**

County Defendants contend that to the extent the complaint asserts any claim against certain individually-named Defendants, they are entitled to summary judgment due to the lack of any evidence that these individuals personally participated in the conduct at issue. *County Defendants' Motion* [#226] at 6-7; *County Defendants' Reply* [#314] at 2. In support of their Motion, County Defendants attached affidavits from Defendants Debbra Russell [Docket No. 227-19], Seth Hooper [Docket No. 227-20], Michael Sanzone [Docket No. 227-21], Kindel Daniels [Docket No. 227-22], Pamela Cates [Docket No. 227-23], Stephen Gregory [Docket No. 227-24], Robert Traylor [Docket No. 227-25], Michael Burgess [Docket No. 227-26], and Paul Vanderslice [Docket No. 227-27].[3] Each affiant swears that he or she did not personally participate in the conduct that led to Plaintiff's alleged injuries. Evidence of a party's personal participation is essential to proceeding with a claim against that party. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

As to Defendants Russell and Gregory, the Court readily agrees that Plaintiff has failed to allege the personal participation of these individuals in his complaint and that the affidavits demonstrate an absence of evidence against them. Accordingly, the burden shifts to Plaintiff to show there exists a genuine factual dispute about their involvement. Plaintiff failed to provide any evidence of the involvement of Defendants Russell or Gregory in his response or supporting affidavit. To the extent that evidence of their involvement is buried in one of the many exhibits attached to Plaintiff's response, the Court declines to search these attachments for documentation sufficient to satisfy Plaintiff's burden. As noted

---

[3] Defendants Hooper, Daniels, and Burgess are referred to in the complaint as "Deputy Hooner," "Sergeant Danials," and "Deputy Bergess." *Complaint* [#114] at 5, 7 &10.

earlier, it is Plaintiff's burden, as the nonmoving party, to direct the Court to supporting evidence that may create a factual dispute. *See Gross*, 53 F.3d at 1546 (10th Cir. 1995). Accordingly, the Court recommends that summary judgment be granted in favor of Defendants Russell and Gregory.

As to Defendant Hooper, Plaintiff names this individual in his complaint as participating in an alleged assault that occurred on November 8, 2006 (Claim IV(a)). Plaintiff's complaint is not a sworn statement and is therefore insufficient to create a material dispute in summary judgment proceedings. Fed. R. Civ. P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970). Defendant Hooper filed an affidavit alleging that he did not personally participate in the conduct giving rise to Plaintiff's alleged injury, and that Plaintiff spit on him when he checked Plaintiff's restraints [Docket No. 227-20]. I find that the affidavit demonstrates an absence of evidence against Defendant Hooper such that the burden shifts to Plaintiff to show that there exists a genuine dispute about his involvement. Plaintiff failed to provide any evidence of the involvement of Defendant Hooper in his response or supporting affidavit. Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Hooper.

As to Defendant Sanzone, Plaintiff names this individual in his complaint as participating in an alleged assault that occurred on November 8, 2006 (Claim IV(a)). *Complaint* [#114] at 7. Defendant Sanzone filed an affidavit alleging that he did not personally participate in the conduct giving rise to Plaintiff's alleged injury and that his sole involvement with Plaintiff was in responding to grievances filed by him [Docket No. 227-21]. Plaintiff failed to refute Defendant Sanzone's contention or to offer any evidence in his response or affidavit to suggest that this individual otherwise personally participated in

17

conduct resulting in Plaintiff's alleged injury. To the extent that Plaintiff is asserting liability against Defendant Sanzone on the theory of supervisory liability, mere participation in the grievance process is an insufficient basis for doing so. *Boles v. Dansdill*, No. 05-cv-01661-PSF-CBS, 2007 WL 2770473, *4 (D. Colo. Sept. 20, 2007) (unpublished decision); *see also Coates v. Sheahan*, No. 94-cv-6107, 1995 WL 430950, *2 (N.D. Ill. July 18, 1995) (unpublished decision) (holding that grievances submitted to a supervisory official are insufficient to establish the official's personal participation in a constitutional violation). Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Sanzone.

As to Defendant Daniels, Plaintiff names this individual in his complaint as participating in an alleged assault on April 18, 2006 (Claim VI). Plaintiff alleges that he asked Defendant Daniels to photograph blood on his cell floor and that Defendant Daniels refused. *Declaration of Plaintiff* [#308-3] at 7. The record is unclear as to whether Plaintiff directly asked Defendant Daniels to take photographs or whether Plaintiff did so by filing a grievance. The Court notes that Defendant Daniels responded to a grievance filed by Plaintiff in this regard [Docket No. 308-36]. In any event, as Plaintiff does not contend that Defendant Daniels participated in the conduct that led to his alleged injury in relation to Claim VI, the Court interprets Plaintiff's claim to be that Defendant Daniels should be held responsible under the theory of supervisor liability. However, as noted above, the "mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct." *Boles*, 2007 WL 2770473, *4 (citing *Johnson v. G.E.O./Lawton Corr. Facility*, No. Civ-04-1467-C, 2005 WL 2739212, at *1 (W.D. Okla. Oct. 24, 2005)); *see also Coates*, 1995 WL 430950,

at *2.  Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Daniels.

As to Defendant Cates, Plaintiff names her in Claims III and IV(a) of his complaint. *Complaint* [#114] at 6-7.  Regarding Claim III, Plaintiff claims that Defendant Cates, along with other officers, "wrongly [took him] to the booking cell" on September 5, 2005 where he was then assaulted.  *Id.* at 6.  Defendant Cates filed an affidavit and claimed that she did not personally participate in the incidents giving rise to his alleged injuries [Docket No. 227-23].  In response, Plaintiff does not attribute any wrongful conduct to Defendant Cates, except that she may have been present when other County Defendants were allegedly assaulting him.  *Declaration of Kettering* [#308-3] at 3.  I find that as to Claim III, Plaintiff has failed to sufficiently raise a dispute about Defendant Cates' participation in the conduct giving rise to Claim III.  Regarding Claim IV(a), Plaintiff claims that Defendant Cates, along with others, attacked him on November 8, 2005.  *Complaint* [#114] at 7.  Defendant Cates filed an affidavit and claimed that she did not personally participate in the incidents giving rise to his alleged injuries and that she was only a witness to Plaintiff's own actions on that day [Docket No. 227-23].  In his response, Plaintiff fails to refute this contention with any evidence, and in his affidavit, does not attribute any conduct in relation to Claim IV(a) to this individual.  Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Cates as to Claims III and Claim IV(a).

As to Defendant Traylor, Plaintiff names this individual in his complaint as participating in the alleged assault that occurred on November 26, 2005 (Claim V). *Complaint* [#114]  at 9.  He specifically claims that Defendant Traylor filmed the alleged assault.  *Id.*  Defendant Traylor filed an affidavit and acknowledged that he filmed the

incident but did not otherwise participate in the alleged assault [Docket No. 227-25]. In his response, Plaintiff fails to attribute any misconduct or harmful behavior to Defendant Traylor. Moreover, he fails to refute Defendant Traylor's contention that he did not participate in the alleged assault with any evidence . Finally, in his affidavit, Plaintiff does not attribute any conduct in relation to Claim V to this individual. Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Traylor.

As to Defendant Burgess, Plaintiff names this individual in his complaint as participating in the alleged assault that occurred on September 5, 2005 (Claim III). *Complaint* [#114] at 5. He claims that Defendant Burgess conspired with Nurse Bruntz to falsely accuse him of violations which led to Plaintiff's alleged assault. *Id.* at 5-6. Defendant Burgess filed an affidavit alleging that he did not personally participate in the conduct giving rise to Plaintiff's alleged injury in relation to Claim III [Docket No. 227-26]. He claims that his involvement with Plaintiff was limited to filing several violation reports against him in September and November 2005. In his affidavit, Plaintiff claims that he was falsely accused of committing a violation, which led to his alleged assault. *Declaration of Kettering* [#308-3] at 4. As there is a genuine dispute as to whether the violation reports were false and Plaintiff has alleged that false report were a contributing factor to the alleged harm he suffered, the Court finds that Plaintiff has sufficiently alleged Defendant Burgess's personal participation to survive summary judgment.

As to Defendant Vanderslice, Plaintiff names this individual in his complaint as participating in an alleged assault that occurred on November 8, 2006 (Claim IV(a)). *Complaint* [#114] at 7. Defendant Vanderslice filed an affidavit alleging that he did not personally participate in the conduct giving rise to Plaintfif's alleged injury in relation to

Claim IV(a) [Docket No. 227-27]. He claims that his sole involvement with Plaintiff was the filing of a minor rule violation report in March 2006. In his response, Plaintiff fails to refute this contention with any evidence, and in his affidavit, does not attribute any conduct in relation to Claim IV to this individual. Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Vanderslice.

In summary, the Court finds that Defendants Russell, Hooper, Sanzone, Daniels, Gregory, Traylor, Cates, Burgess and Vanderslice have, as an initial matter, sufficiently demonstrated the absence of evidence to support Plaintiff's case against them. Because they met their initial burden, the burden shifted to Plaintiff to show the existence of a genuine dispute of a material issue by providing "specific facts showing there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. With the exception of Defendant Burgess, the Court finds that Plaintiff failed to show the existence of any dispute as to these individuals' personal participation in the alleged illegal conduct. As such, the Court recommends that **County Defendants' Motion** be (1) **granted** as to the above-named individuals as to all claims, and (2) **denied** as to Defendant Burgess as to Claim III.

### 2.    Claim II:  Deliberate Indifference of an Alleged Serious Dental Need (Eighth Amendment)

As noted above, Claim II can be summarized in two ways:  (a) it is a general claim regarding County Defendant's alleged deliberate indifference to Plaintiff's dental needs; and (b) it is a specific claim against Nurse Bruntz only for her failure to provide the proper dosage of oral rinse to alleviate Plaintiff's tooth pain.

As a preliminary matter, it is unclear whether Plaintiff attempts to repackage his claim against Nurse Bruntz to assert her involvement in the alleged general deliberate

indifference to his medical needs (Claim II(a)).  Plaintiff's response does not identify the specific Defendants against whom Plaintiff asserts this general claim.  To the extent that Plaintiff intended to include Nurse Bruntz in his general claim, the Court finds that Plaintiff's claim against Nurse Bruntz is limited to her alleged failure to give Plaintiff the proper dosage of oral rinse.  Specifically, Plaintiff testified at his deposition that his sole claim against Nurse Bruntz was that she failed to give him the proper dosage of oral rinse. *Deposition of Kettering* [#315-2] at 2.  He admitted that Nurse Bruntz had no authority to provide him with other forms of dental care, e.g., directing that he receive root canals, and that he never asked her for any form of medical assistance other than demanding more oral rinse.  The Court construes this testimony as a judicial admission and although Plaintiff was not represented by counsel at the time of this admission, the Court finds that any last minute attempt to assert broader claims against Nurse Bruntz is inappropriate.  *See United States Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005); *Baker v. Echostar Communs. Corp.*, No. 06-cv-01103, 2007 WL 4287494, at **14-15 (D. Colo. Dec. 4, 2007) (unpublished decision).

To the extent that Plaintiff alleges that Nurse Bruntz failed to give him the proper dosage of oral rinse (Claim II(b)), he failed to exhaust this claim and is barred from asserting it herein.  *See supra* Part IV.B.1.a.i.  As the only named Defendant responsible for the injury alleged in Claim II(b) is Nurse Bruntz, I recommend that Claim II(b) be dismissed.  Accordingly, the Court considers this claim only as to whether County Defendants (not including Nurse Bruntz) were deliberately indifferent to Plaintiff's alleged serious dental needs generally (Claim II(a)).

22

The Eighth Amendment[4] prohibits cruel and unusual punishment. U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). Here, the issue is the dental care that was provided to Plaintiff. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

To the extent that Plaintiff also raises an issue related to the delay in receiving medical treatment, the Tenth Circuit has held that "(1) a medical professional failing to treat

---

[4] County Defendants initially analyzed whether Claim II stated a claim for deliberate indifference pursuant to the Fourteenth Amendment. *County Defendants' Motion* [#226] at 7-8. In his response, Plaintiff clarified that he intended to assert an Eighth Amendment claim, and the Court limits its analysis to whether the alleged conduct constitutes deliberate indifference pursuant to the Eighth Amendment. *See Response* [#308] at 18-21.

a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition...[may]... constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2008)). However, "[d]elay in medical care only constitutes an Eighth Amendment violation where the Plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210 (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable").

As to the subjective component, the Court considers whether County Defendants intended the deprivation, i.e, acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of or disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

Considering the objective component first, Plaintiff argues that he was denied adequate medical care for a sufficiently serious dental need. Specifically, he claims that Defendants' nearly twelve-month delay or refusal to provide medical care for Plaintiff's dental pain caused him significant pain and satisfies the substantial harm requirement. *Response* [#308] at 20; *Kettering Declaration* [#308-3] at 1. Because Plaintiff's dental condition was not diagnosed as requiring treatment beyond that which he was provided, the Court assumes that Plaintiff is asserting that his condition was so obvious that even a lay person would easily recommend the necessity for treatment. County Defendants do not appear to address whether Plaintiff's dental needs were sufficiently serious. Rather, they focus exclusively on whether Defendants were subjectively deliberately indifferent to Plaintiff's dental needs. Accordingly, the Court finds that County Defendants have not

satisfied their initial burden of demonstrating the absence of evidence regarding the objective component.

As to the subjective component, County Defendants contend that "[t]he question is not whether Plaintiff received all of the dental care and cosmetic procedures he demanded, but whether the County Defendants knew that Plaintiff's dental complaints presented a substantial risk of harm to Plaintiff but disregarded the risk by not taking reasonable measures to address the harm." *County Defendants' Motion* [#314] at 3. County Defendants further contend that it is undisputed that they frequently treated Plaintiff for his dental complaints, including the prescription of medication and oral rinses. *Id.*

Plaintiff counters that given the number of grievances he filed related to his dental issues, his constant complaints of swollen gums and significant pain caused by abscesses and oral infection, and his requests for root canals and new veneers, Defendants deliberately and intentionally ignored many of these conditions and did not provide him with proper care. *Response* [#308] at 18-21. Specifically, County Defendants' provision of oral rinses were not intended to treat his abscesses or infections, and only temporarily eased the pain caused by his swollen gums. *Kettering Declaration* [#308-3] at 2; *Nurse Bruntz's Motion* [#218] at 13.[5] Plaintiff also contends that when he requested to see his private dentist to have root canals performed, he was told in response to a grievance that because

---

[5] To the extent that County Defendants attempt to incorporate the arguments raised by Nurse Bruntz in her Motion, the Court considers that Motion and its supporting affidavits. However, given that the Court has determined that Plaintiff's claim against Nurse Bruntz was limited to whether she violated his Eighth Amendment rights by failing to give him the proper dosage of oral rinse, and given that the argument in her Motion only addresses that issue, the Motion is of limited usefulness regarding the question of whether County Defendants were deliberately indifferent to Plaintiff's serious dental needs generally.

he could not afford to pay a private doctor for the associated costs, his request was denied. *Declaration of Kettering* [#308-3] at 2-3. Plaintiff argues that this is in clear violation of LCDC policy that no inmate be denied medical or dental care on the basis of his inability to pay for such services [Docket No. 308-12]. *Response* [#308] at 21. Plaintiff contends that Defendants' actions in violation of this policy, as well as their refusal to provide him treatment that alleviated his well-documented complaints of dental pain beyond the temporary relief for his swollen gums, satisfies the subjective component. In further support of his argument, Plaintiff notes that immediately upon his release from LCDC, he received the root canals he had long been requesting, but had been denied by County Defendants, and has had no further dental issues. *Declaration of Kettering* [#308-3] at 2.

County Defendants do not address Plaintiff's specific contention that they denied him medical care on the basis of his inability to pay or that such denial evidences a violation of their policies. Rather, they assert that they contacted Plaintiff's private dentist, apprised him of Plaintiff's condition, and that he confirmed Plaintiff's complaints were not urgent in nature. *County Defendants' Reply* [#314] at 3. They also contend that his private doctor agreed that oral rinse and the use of antibiotics were the appropriate method of treatment. *Id.* In support of their contentions, they cite Plaintiff's dental records, which the Court finds to be difficult to decipher and illegible in parts [Docket No. 227-32]. They also cite grievances filed by Plaintiff wherein LCDC staff responded to his dental complaints by indicating that Plaintiff's private dentist was consulted and that he determined Plaintiff's issues were "non-urgent" [Docket No. 308-8 at 7]. Further, a review of the grievances filed by the parties reveals several instances where staff said that they would schedule an appointment with a doctor to address Plaintiff's dental complaints or that they waived the

$15.00 co-pay he was ordinarily required to pay to see a doctor [Docket No. 308-8 at 5, 7]. The Court also located grievances where staff noted that they would provide a different form of rinse or antibiotics to better address Plaintiff's dental needs [Docket Nos. 308-9 at 20 & 308-10 at 2].

The Court did not locate a grievance where Plaintiff was specifically refused necessary medical care on the basis of his inability to pay for it, but did locate two relevant grievances (1) where Plaintiff was informed that he was responsible to pay for any dental care for injuries that existed prior to his placement at LCDC [Docket No. 217-15 at 7] and (2) where staff informed Plaintiff that because his private dentist said this is a "non-urgent matter . . . further treatment he is recommending <u>may</u> be done when you leave here" [Docket No. 308-8 at 8]. Although the Court assumes that "further treatment" refers to root canals, it is unclear from the grievances what "further treatment" was recommended by Plaintiff's private dentist or why Plaintiff could not receive it while incarcerated at LCDC.

Nevertheless, the Court finds that the evidence provided by Plaintiff is insufficient to raise a genuine dispute. It should be noted that an inmate's difference of opinion concerning the medical treatment he received does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). The primary issue here is Plaintiff's disagreement with the type of care he was provided. To the extent that Plaintiff, in his opinion, is asserting that County Defendants did not satisfactorily perform their medical duties, "such a difference of opinion amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal § 1983 action. . . . [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. Civ.A. 95-3006-GTV, 1998 WL 154552,

at *2 (D. Kan. Mar. 17, 1998) (unpublished decision) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his knee injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim). As was the case in *Pearson*, "Plaintiff was not denied medical treatment, rather he merely disagrees with defendant's medical judgment." *See id.* Further, a review of the evidence indicates that County Defendants continually attempted to care for Plaintiff's dental complaints, frequently scheduled him for dental appointments and sought the advice of his private dentist, and ordered alternative methods of treatment. In these circumstances, Plaintiff is unable to provide sufficient evidence of County Defendant's subjective desire to cause harm to Plaintiff.

Considering the parties' evidence and arguments on this issue, the Court finds that there is no genuine factual dispute about whether County Defendants were deliberately indifferent to Plaintiff's serious dental needs. Accordingly, **County Defendants' Motion** should be **granted** as it relates to Claim II(a)'s general claim regarding County Defendants' (not including Nurse Bruntz) alleged deliberate indifference to Plaintiff's serious dental needs. As noted above, to the extent that Claim II(b) relates to Nurse Bruntz and her provision of oral rinse, I further recommend that this portion of the claim be dismissed.[6]

---

[6] Other than Nurse Bruntz, it is unclear which individually-named Defendants are claimed by Plaintiff to have contributed to his injuries in Claim II. To the extent that Plaintiff named unknown nurses as parties in his complaint, he has failed to identify them through discovery, or serve them with a summons and complaint. Plaintiff had 120 days from November 2, 2006 – the date his complaint naming these individuals was filed – within which to serve them. Fed. R. Civ. P. 4(m) authorizes the Court to dismiss parties due to the failure to timely serve the summons and complaint, unless Plaintiff can show good cause for his failure. *See Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995). In this case, Plaintiff failed to provide any explanation for his failure to timely identify and serve the unknown nurses. As such, given the late stage of these proceedings, I recommend that they be dismissed. Further, I note that in his statement of remaining parties, Plaintiff appears to abandon this claim against

### 3. Claim III: Alleged September 5, 2005 Assault (Eighth Amendment)

As a preliminary matter, Nurse Bruntz argues that this claim should be dismissed as it relates to her due to the lack of evidence that she personally participated in this alleged incident. According to Plaintiff, Nurse Bruntz's sole involvement in relation to this claim is that she allegedly falsely accused him of misconduct such that other officers sought to punish him, which led to his assault by those officers. *Complaint* [#114] at 5. To be clear, Plaintiff does not allege that Nurse Bruntz participated in the alleged assault, only that her actions were a contributing force to it. Specifically, in his complaint, Plaintiff alleges that Nurse Bruntz and Defendant Burgess lied about verbal abuse Nurse Bruntz allegedly received from Plaintiff. *Id.* at 5-6. This alleged lie led to Plaintiff later being assaulted by Defendants Harris, Esters, and others. *Id.* at 6. However, in Plaintiff's response, he does not attribute any wrongdoing to Nurse Bruntz. The extent of his accusation against her is contained in his affidavit, which states "I was falsely accused of being rude and using profanity with Nurse Bruntz and as a result was taken to the booking cells . . . ." *Declaration* of *Kettering* [#308-3] at 3.

Although Plaintiff testified that he did not use abusive language toward Nurse Bruntz, the medical reports filled out at the time of the incident indicate the contrary [Docket No. 217-23 at 17]. *Declaration of Nurse Bruntz* [#217-9] at 3-4. Further, Plaintiff admitted in his deposition testimony that he did not hear any conversation between Defendant Burgess and Nurse Bruntz that allegedly caused him thereafter to be taken by other officers to the booking cell. *Deposition of Kettering* [#217-33] at 10. Importantly, Plaintiff's sole

---

unknown parties and does not list any unknown nurses [Docket No. 312].

accusation that Nurse Bruntz herself falsely accused him is made in his unverified complaint. This conclusory allegation cannot form the basis for his claim. *See Adickes*, 398 U.S. at 158 n.17. As Nurse Bruntz had no control over Plaintiff's classification or placement in the facility, she argues that Claim III fails to state a claim as to her. *Nurse Bruntz's Motion* [#218] at 16; *Declaration of Nurse Bruntz* [#217-9] at 3-4.

I find that Nurse Bruntz has demonstrated the absence of evidence against her and the burden shifts to Plaintiff to establish a genuine dispute about her involvement. Plaintiff fails to put forth any evidence to show that Nurse Bruntz actually made false accusations against him, had a conversation that led to his transfer to a booking cell, or bore any responsibility for the alleged assault that occurred thereafter. Because this is the extent of Plaintiff's claim against Nurse Bruntz in his complaint, I recommend that Nurse Bruntz's Motion be granted as it relates to Claim III.

County Defendants also move for summary judgment as to Claim III to the extent that Plaintiff alleges that he was assaulted by them in violation of the Eighth Amendment. *County Defendants' Motion* [#226] at 9-11. As noted in relation to Claim II, there are objective and subjective components to an Eighth Amendment analysis. Specifically, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation" and "that the officials acted with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

Here, Plaintiff alleges that County Defendants used excessive force in transporting him to and securing him in the booking cell on September 5, 2006. *Kettering Declaration* [#308-3] at 3. An excessive force claim turns on an objective element, i.e., whether the alleged wrong "was objectively harmful enough to establish a constitutional violation."

*Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (citation omitted). It also turns on a subjective element, i.e., "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Further, it is not necessary for Plaintiff to suffer a significant injury in order to state a claim for excessive force. *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).

Defendants contend that the evidence sufficiently demonstrates that Plaintiff was a problem inmate [Docket Nos. 227-2 through -5]. Indeed, the exhibits are replete with references to Plaintiff's frequent violent behavior, threats, attempts to spit at or bite LCDC staff, obscenity-laden accusations against staff, etc. While County Defendants spend many pages in their Motion attempting to justify their alleged behavior in relation to the November 2005 incidents at issue in Claims IV and V, they only briefly address Plaintiff's assertion that they applied excessive force in taking him to the booking cell and securing his person in relation to Claim III. Instead, they direct the Court to Plaintiff's Inmate Behavior Observation Log and other reports which carefully detail the abusive behavior exhibited by Plaintiff at the time of the alleged assault [Docket No. 227-2]. They argue that any alleged force they used was justified by Plaintiff's belligerent and abusive behavior. However, they do not address what level of force was used.

Plaintiff responded that County Defendants twisted his arms and caused him severe pain and numbness for the next four months. *Declaration of Kettering* [#308-3] at 3. He also alleges that during the incident on September 5, 2005, he was thrown to the floor of the booking cell while being pulled by the arms and legs in what he describes as an attempt to break his limbs. Finally, he contends that the officers pounded his head on the floor.

While County Defendants replied that there is no evidence that they pounded his head on the floor, I find that there is at least a factual dispute as to what level of force the officers exerted. *See County Defendants' Reply* [# 314] at 4. Moreover, the level of force detailed by Plaintiff is arguably "objectively harmful enough to establish a constitutional violation." *Smith*, 339 F.3d at 1212.

It is true that wide-ranging deference should be given to prison staff in their attempts to quell prison disturbances; however, that deference is not without limit. *See Hudson*, 503 U.S. at 6. The unnecessary and wanton infliction of pain in those circumstances can nevertheless amount to an Eighth Amendment violation. *Id.* at 5; *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006). Turning to the subjective component of an excessive force claim, the requisite intent can be inferred when there is no legitimate purpose for the conduct. *Serna*, 455 F.3d at 1152. Further, considering the four-part test for determining the legitimacy of force used as enunciated by the Supreme Court in *Hudson*, namely (1) whether there was a need for force, (2) the amount of force exerted, (3) the perceived threat to the officers, and (4) the officers' attempts to temper the force used, I find that there is a dispute as to whether Plaintiff's conduct merited the level of force alleged by Plaintiff and whether County Defendants behaved in a wanton manner without regard for the infliction of pain. *See Hudson*, 503 U.S. at 7. While there is ample evidence of Plaintiff's abusive behavior, the majority of that behavior amounted to verbal rather than physical abuse [Docket No. 227-2]. In addition, while there is also evidence that Plaintiff initially resisted being placed in restraints, the alleged abuse of County Defendants occurred after he was restrained, and there is no evidence that Plaintiff exhibited anything other than verbal abuse at that point. As such, there remains a question whether Plaintiff's

comments such as "you're a bunch of fucking dicks," you ain't shit," and "I would kick your ass on the street" legitimately justified the alleged unnecessarily painful restraint and assaultive behavior described by Plaintiff. *See id.* at 1.

As such, the Court recommends that **County Defendants' Motion** be **denied** as it relates to Claim III's allegation regarding County Defendants' use of excessive force. The Court further recommends that **Nurse Bruntz's Motion** be **granted** as to Claim III, and this claim be dismissed as to her.

4. **Claim IV: (a) November 8, 2005 Restraint Chair Incident (Eighth Amendment); (b) Unauthorized Injection of Antipsychotic Drug (Fourteenth Amendment); and (c) Confinement in Safety Cell for Four to Five Days (Eighth Amendment)**

a. **Confinement in Restraint Chair**

Claim IV(a) relates to Plaintiff's allegation that on November 8, 2005, County Defendants were deliberately indifferent to a basic human need and that they used excessive force in extracting him from his cell and placing him in a restraint chair in a booking cell for nineteen (19) hours.

To the extent that Plaintiff brings a claim against Nurses Hoffman and Hauge in relation to this claim, Claim IV(a) fails because there is no evidence that Nurses Hoffman and Hauge personally participated in the decision to extract Plaintiff from his cell, restrain Plaintiff in the chair, or place him in a booking cell, nor is there evidence that they had any control over where he was restrained. *See Mitchell*, 80 F.3d at 1441. Plaintiff contends that "Defendants" listed in Claim IV are responsible for his conditions. *See Response* [# 308] at 15, 17. However, summary judgment cannot be defeated merely on the basis of

conclusory, unsupported statements. *Rice*, 166 F.3d at 1092. The lack of a dispute about any material factual issue entitles Nurses Hoffman and Hauge to judgment as a matter of law in relation to Claim IV(a).

In their defense to Claim IV(a), County Defendants contend that the evidence unequivocally demonstrates that the use of force and placement of Plaintiff in the restraint chair in a booking cell on November 8, 2005 by the SERT team was reasonable and necessitated by Plaintiff's abusive and threatening behavior. *County Defendants Motion* [#226] at 9-10. As indicated earlier, County Defendants attach a DVD of the incidents leading up to Plaintiff's extraction from his cell and placement in the restraint chair [Docket No. 229]. They also attach restraint logs of the events which were filled out by multiple staff members over a period of time while Plaintiff was secured in the restraint chair [Docket No. 227-3 at 27-28]. The attached evidence consistently demonstrates that Plaintiff refused to comply with LCDC staff commands and therefore some measure of restraint was required. As such, the burden shifts to Plaintiff to show that disputes remain about whether he is entitled to relief for the events that transpired on November 8, 2005.

As a preliminary matter, Plaintiff's version of the events leading up to his nineteen-hour placement in a restraint chair exaggerates the conduct of County Defendants and fails to account for Plaintiff's own abusive behavior. *Compare* [Docket No. 229], *with Declaration of Kettering* [#308-3] at 4-5. Moreover, the extraction appears to be wholly in line with SERT team extraction procedures for noncompliant inmates [Docket No. 227-7]. While there appeared to be a physical struggle at the point of entry of the SERT team into Plaintiff's cell, it appeared to be necessitated by Plaintiff's own conduct – e.g., he was brandishing a shard from a broken cup and he tried to strike the SERT team leader when

34

the cell door was initially opened – and could have been avoided if Plaintiff had complied with the team's commands. Further, after entry, Plaintiff bit and kicked at County Defendants.

Considering the objective component of the excessive force analysis, I find that the alleged conduct of County Defendants would, if true, amount to an objective constitutional violation. However, considering the subjective component, i.e., whether County Defendants acted in good faith to restore order, I find that given Plaintiff's violent and non-compliant behavior on this day, there is no dispute that County Defendants did not act with a malicious intent. This holding is further supported by the four-part test enunciated by the Supreme Court in *Hudson*, namely (1) there was clearly a need for force, (2) the amount of force was not excessive, at least as it relates to Plaintiff's extraction and given Plaintiff's attempts to bite, kick, and resist the officers, (3) Plaintiff's own conduct created a viable threat, and (4) County Defendants first attempted not to use force at all and then, when force became necessary, appropriately tempered the force used. *See Hudson*, 503 U.S. at 7. In short, there is no evidence that County Defendants' wilfully intended to harm Plaintiff. In fact, a review of the video shows a measured and careful response, including several attempts by LCDC staff to exert less, rather than more, force.

However, the extraction of Plaintiff from his cell is not the heart of this claim. Rather, Plaintiff argues that his placement in a restraint chair in a booking cell following his extraction for a period of nineteen hours violated his constitutional rights. Plaintiff contends that he was "forced to sit in his own urine and feces without food or water, bleeding, and with chemicals [from the pepper balls] festering on his body." *Response* [#308] at 15. He also claims that he was taunted by staff and although food was placed on his lap after

seventeen hours, the officers refused to untie his hands so he could eat it. *Id.* What events transpired while Plaintiff was in the restraint chair is not captured on video. Although the restraint log is replete with Plaintiff's own abusive taunts, it is not necessarily inconsistent with Plaintiff's contentions that he was effectively denied the ability to consume food or water or relieve himself [Docket No. 227-3 at 27-28]. Moreover, while the restraint log indicates that County Defendants offered to release Plaintiff after ten hours and offered him water after eleven hours, offers which Plaintiff disputes occurred, Plaintiff directs the Court to LCDC's restraint policy which requires that an inmate be provided the opportunity to relieve himself and consume water "[a]t least every two hours" [Docket No. 308-7 at 5]. The restraint log does not reflect that these offers were made every two hours [Docket No. 227-3 at 27-28]. While a jury could find that Plaintiff's conduct and verbal threats justified his nineteen-hour predicament, a jury could also find that the magnitude of Plaintiff's deprivations over that time period was excessive, in violation of LCDC policy, and disproportionate to Plaintiff's conduct.

Considering the standard Eighth Amendment deliberate indifference analysis, Plaintiff argues that deprivation of life's basic necessities for nearly a full day constitutes an extreme deprivation and establishes the objective element of this analysis. He also argues that County Defendants' violation of their policies, their taunts, and their deprivation of food, water, and the ability to use the restroom while Plaintiff was covered in pepper ball chemicals and forced to sit in his own waste for this period of time satisfies the subjective standard. While the record indicates that Plaintiff refused staff's offer to clean the pepper ball chemicals from his body or provide other medical attention at the inception of his placement in the restraint chair, I agree that there is a factual dispute as to whether County

Defendants' conduct during Plaintiff's nineteen-hour placement in the restraint chair amounted to deliberate indifference.  *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (holding that the prolonged deprivation of water, taunting, and the inability to use the bathroom "created a risk of particular discomfort and humiliation" and "violated the 'basic concept underlying the Eighth Amendment [which is nothing less than the dignity of man]'" (citation omitted)).

Although County Defendants contend that the DVD "shows Plaintiff is lying" and that because Plaintiff's affidavit is contradicted by the objective record it should be ignored, the Court is not persuaded by either contention as the claim relates to Plaintiff's placement in the restraint chair.  *See County Defendants' Motion* [#226] at 11.  First, the video does not record what happened while Plaintiff was in the restraint chair in the booking cell.  Second, as to Plaintiff's affidavit regarding his time spent in the restraint chair, the Court does not find that it is "blatantly contradicted by the record" so as to warrant its disregard.  *See Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1774-76 (2007).

Quite simply, there are two versions of these events – County Defendants' version and Plaintiff's version – and each are supported by affidavit or other evidence.  The video, while tending to support County Defendants' version regarding the initial extraction, does not address what occurred while Plaintiff was secured to the restraint chair in the booking cell.  As such, conflicting evidence creates a question of credibility and interpretation which should be resolved by the fact finder.  *See, e.g.*, *Klein v. Grynberg*, 44 F.3d 1497, 1503-04 (10th Cir. 1995); 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2726 at 443-48 (3d ed. 1998).  Further, to the extent that County Defendants' argument can be interpreted to assert that summary judgment is appropriate because the weight of the

evidence rests in their favor, "[s]ummary judgment concerns the sufficiency of the evidence to present an issue for trial, not the weight of such evidence." *Carey v. USPS*, 812 F.2d 621, 623 (10th Cir. 1987); *United States v. Hager*, 969 F.2d 883, 888 (10th Cir. 1992) ("The credibility of a witness and weight of his testimony are for the trier of fact alone."), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995); *see also United States v. Great Salt Lake Council, Inc.*, No. 2:04-CV-604 TC, 2007 WL 189470, at *3 (D. Utah Jan. 22, 2007) (unpublished decision) (noting that a "single sworn statement is sufficient to create an issue of fact precluding summary judgment" (citation omitted)).

In summary, while I find that Plaintiff has failed to demonstrated a dispute regarding whether County Defendants' conduct on November 8, 2005 amounted to excessive force, I also find that Plaintiff has sufficiently demonstrated a dispute regarding whether County Defendants were deliberately indifferent to Plaintiff's basic human needs on this day. As such, I recommend that **County Defendants' Motion** be **denied** as to Claim IV(a).

### b. Antipsychotic Drug Injection

Pursuant to Claim IV(b), Plaintiff contends that Nurses Hoffman and Hauge administered Haldol, without his consent and in violation of his Fourteenth Amendment Right to due process. *Complaint* [#114] at 7-8; *Plaintiff's Response* [#308] at 9. Haldol is an antipsychotic drug administered for the purpose of sedating out-of-control patients. *Hoffman and Hauge's Motion* [#216] at 5. Nurses Hoffman and Hauge admit that they injected Plaintiff with Haldol, but argue that they were following medical orders, that the injection was in compliance with jail policies, and that the injection did not implicate Plaintiff's constitutional rights. *Id.* at 11-16; *Hoffman and Hauge's Reply* [#316] at 3-9. In

any event, they contend that they are entitled to qualified immunity. *Hoffman and Hauge's Motion* [#216] at 16-18. As discussed above, because the Court finds that Plaintiff failed to exhaust this claim, I do not reach the merits of this allegation, and recommend that **Nurses Hoffman and Hauge's Motion** be **granted**. *See surpa* Part IV.B.1.a.ii. Further, as Claim IV(b) on its face is limited to allegations against Nurses Hoffman and Hauge, I further recommend that Claim IV(b) be dismissed.

### c. Confinement in Safety Cell

Claim IV(c) relates to Plaintiff's confinement in a safety cell for four to five days after the incidents that occurred on November 8, 2005. Specifically, after Plaintiff's nineteen-hour confinement in the restraint chair ended, Plaintiff was placed in a safety cell. Plaintiff contends that during this time period, County Defendants were deliberately indifferent to his basic human needs when they deprived him of a mattress, sink, access to water, and a toilet. Plaintiff also contends that he was covered in his own waste and urine, and that he continued to be covered in the pepper ball chemicals from his November 8, 2005 extraction. He alleges that he was given limited water to drink in paper cups and was forced to defecate in paper bags. *Declaration of Kettering* [#308-3] at 4-5.

To the extent that Plaintiff brings a claim against Nurses Hoffman and Hauge in relation to this claim, Claim IV(c) fails because there is no evidence that Nurses Hoffman and Hauge personally participated in the decision to confine Plaintiff to the safety cell for a period of four to five days, nor is there evidence that they had any control over where he was confined. *Mitchell*, 80 F.3d at 1441. Plaintiff contends that "Defendants" listed in Claim IV are responsible for his conditions. *See,* e.g., Response [# 308] at 15-17.

However, summary judgment cannot be defeated merely on the basis of conclusory, unsupported statements. *Rice*, 166 F.3d at 1092. The lack of a dispute about any material issue in this regard entitles Nurses Hoffman and Hauge to judgment as a matter of law in relation to Claim IV(c).

In their defense to Claim IV(c), County Defendants contend that their restraint of Plaintiff in a safety cell for this period of time was consistent with LCDC policies and does not amount to an Eighth Amendment violation. *Declaration of Pat McCosh* [#227-28] at 2. However, County Defendants do not address Plaintiff's specific contentions regarding Claim IV(c), namely that he was deprived of the ability to clean himself, access to water, a mattress and a toilet for a period of four to five days. Rather, they allege that any deprivations (without describing such deprivations) were necessary given Plaintiff's abusive and belligerent behavior directed at staff. *County Defendants' Reply* [#314] at 6. It is true that the inmate observation log indicates that Plaintiff was given a mattress and was verbally abusive toward staff during his confinement in the safety cell such that it would appear some level of deprivation was warranted [Docket No. 227-3 at 37-50]. However, Plaintiff disputes that he was given a mattress and argues that the deprivation of life's basic necessities for four to five days posed a serious risk of harm to Plaintiff. He asserts that County Defendants' deprivation of humane conditions, including that Plaintiff was covered in pepper ball chemicals and forced to lie near his own waste for this period of time, satisfies both the objective and subjective standard in determining whether an Eighth Amendment violation has occurred. *Response* [#308] at 17.

Considering the standard Eighth Amendment deliberate indifference analysis, despite the fact that some of Plaintiff's deprivations may have been justified by his own

conduct, I agree that a genuine issue of material fact exists as to whether County Defendants' conduct exceeded what was reasonable under the circumstances and amounted to deliberate indifference. *See, e.g.*, *DeSpain v. Uphoff*, 264 F.3d 965, 974-77 (10th Cir. 2001) (holding that evidence of prolonged exposure to human waste unquestionably raises questions of objective harm and subjective indifference sufficient to satisfy the nonmoving party's burden at summary judgment); *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) (denying summary judgment where Plaintiff was deprived of the use of a toilet for four days).

In summary, I find that there is a genuine issue of material fact regarding whether County Defendants' were deliberately indifferent to Plaintiff's basic human needs when they placed him in a safety cell for four to five days. I also find that the extent of the deprivations that Plaintiff suffered is not entirely clear, and that given these factual disputes, summary judgment is not appropriate here. As such, I recommend that **County Defendants' Motion** be **denied** as to Claim IV(c).

### 5.  Claim V:  Alleged November 26, 2005 Assault (Eighth Amendment)

Claim V relates to an incident that occurred on November 26, 2005 where, after complaining about receiving limited recreation time, Plaintiff was forcibly extracted from his cell by the SERT team and placed in a restraint chair in a booking cell. Plaintiff contends that County Defendants used excessive force in extracting him from his cell and placing him in a restraint chair in a booking cell for four to five hours. *Declaration of Kettering* [#308-3] at 6.

County Defendants contend that the evidence unequivocally demonstrates that the

use of force and placement of Plaintiff in the restraint chair on November 26, 2005 by the SERT team was reasonable and necessitated by Plaintiff's behavior. *County Defendants Motion* [#226] at 9-10. As with the November 8, 2005 extraction, County Defendants attach a DVD of the incidents leading up to Plaintiff's extraction from his cell and placement in the restraint chair. The attached evidence demonstrates that Plaintiff refused to comply with LCDC staff commands and therefore some measure of restraint was required. As such, the burden shifts to Plaintiff to show that disputes remain about whether he is entitled to relief for the events that transpired on November 26, 2008.

However, unlike the events that transpired on November 8, 2005 where Plaintiff was wielding a broken cup as a weapon and behaving in a threatening manner, on this day, the video shows Plaintiff sitting calmly on his bed reading his Bible [Docket No. 229]. When the SERT team arrived, the team leader informed his staff that Plaintiff had tried to flood his cell, however there are no visible signs of water on the floor. The SERT team asked Plaintiff to move to the center of his cell so the SERT team could peaceably enter, but Plaintiff stated that he could not hear these commands through the cell door. Thereafter, the team fired thirteen pepper balls into the room, striking Plaintiff on the bed, and they then forcibly entered the cell and a struggle ensued. Unlike on November 8, 2005, the need for the SERT team to extract Plaintiff on this day is not entirely clear, and the Court is left to wonder whether the use of the SERT team and their methods for extraction were justified.

Defendants do not dispute that Plaintiff is a fifty-five year old man. The SERT team sent in five to six officers with a large shield, combat gear, pepper balls, and riot helmets to subdue Plaintiff into submission [Docket No. 229]. While this appears to be standard

procedure [Docket No. 227-7], on the video, Plaintiff was not out of control nor behaving in a threatening manner. Moreover, it is difficult for the Court to judge through the video whether Plaintiff did anything to justify the struggle that ensued or the Defendants' need to forcibly restrain Plaintiff. In the video, while Plaintiff is being wheeled away in the restraint chair, a bruise or mark is clearly visible on Plaintiff's head. Plaintiff claims that the team hit his head on the concrete wall, stepped on his head, and forced his ear into a broken pepper ball. *Declaration of Kettering* [#308-3] at 6. He also contends that he was forced to remain in the restraint chair for four to five hours covered in pepper ball chemicals. County Defendants do not dispute this but merely argue that Plaintiff's conduct justifies their behavior, whatever that behavior might have been. *See County Defendants' Reply* [# 314] at 5. Considering the record, I find that there is at least a factual dispute as to what level of force the officers exerted. Moreover, the level of force detailed by Plaintiff is arguably "objectively harmful enough to establish a constitutional violation." *Smith*, 339 F.3d at 1212.

Again, while wide-ranging deference should be given to prison staff in their attempts to quell prison disturbances, the unnecessary and wanton infliction of pain in those circumstances can nevertheless amount to an Eighth Amendment violation. *See Hudson*, 503 U.S. at 5-6; *Serna*, 455 F.3d at 1152. Turning to the subjective component of an excessive force claim, the legitimacy of County Defendants' conduct appears to be in question. Further, considering the four-part test for determining the legitimacy of the force used as enunciated by the Supreme Court in *Hudson*, namely (1) whether there was a need for force, (2) the amount of force exerted, (3) the perceived threat to the officers, and (4) the officers' attempts to temper the force used, I find that there is a genuine factual

dispute as to whether Plaintiff's conduct merited the level of force applied by County Defendants on this day and whether that force was wilfully intended to inflict pain. *See Hudson*, 503 U.S. at 7.

County Defendants again contend that the DVD "shows Plaintiff is lying" and that because Plaintiff's affidavit is contradicted by the objective record it should be ignored, *See County Defendants' Motion* [#226] at 11. As before, the Court is not persuaded by either contention. First, as to the video, the Court has concerns that the level of force exerted was not necessary under the circumstances. Second, as to Plaintiff's affidavit, the Court does not find that it is "blatantly contradicted by the record" so as to warrant its disregard. *See Scott*, 127 S. Ct. at 1774-76. As noted earlier, there are two versions of these events – County Defendants' version and Plaintiff's version – and each are supported by affidavit or other evidence. The video in this instance shows County Defendants exerting force on an inmate who is calmly sitting on his bed. While the Court is loathe to question LCDC's need to control out-of-control inmates, no excessive unruliness is apparent on the video. Further, the video also does not provide a good vantage point to judge whether some or all of the alleged excessive conduct occurred. As such, the questions of credibility and other factual disputes that remain should rightfully go to the finder of fact. *See Klein*, 44 F.3d at 1504; 10A Charles Alan Wright et al, *supra*, § 2726, at 443-48. In summary, I find that Plaintiff has sufficiently demonstrated a dispute regarding the extent of the force applied and whether County Defendants' used excessive force. Accordingly, I recommend that **County Defendants' Motion** be **denied** as to Claim V.

### 6. Claim VI: Alleged April 18, 2006 Assault (Eighth Amendment)

Claim VI relates to an incident that occurred on April 18, 2006 where Plaintiff was accused of hoarding unauthorized oral rinse in his cell. When he complained about the confiscation of his oral rinse, Plaintiff claims that County Defendants began to harass him and falsely accuse him of flooding his cell. Plaintiff contends that County Defendants used excessive force in extracting him from his cell and placing him in a booking cell. *Declaration of Kettering* [#308-3] at 6-7. After reaching the booking cell, he claims that he was beaten unconscious, tasered in the abdomen, and received lacerations on his arm and face which bled on the floor. He also claims that during his confinement in the booking cell, he was "freezing cold" and was kept there for approximately twenty-eight hours without the ability to keep warm. *Id.* at 8.

County Defendants argue there is no evidence to support Plaintiff's claim that they used excessive force against him on April 18, 2006. However, in his affidavit, Plaintiff cites to a litany of alleged assaultive behavior which disputes this contention. *Declaration of Kettering* [#308-3] at 6-8. In their reply, County Defendants argue that certain conduct was justified by Plaintiff's own conduct, and they also argue that many of the alleged actions attributed to them "are entirely unsubstantiated and contrary to the record." *Reply* [#314] at 7. However, Defendants fail to dispute with specificity any of Plaintiffs' allegations and only refer to their own conduct as attempts to "secure[]" Plaintiff, without describing what that conduct was. *See id.* Moreover, there is no dispute that County Defendants tasered Plaintiff in the abdomen on this day [Docket No. 227-5 at 4].

Rather than address Plaintiff's allegations relating to April 18, 2006 incident, County Defendants attempt to use the DVD of incidents that occurred in November 2005 (Claims IV & V) to show that Plaintiff is lying about the incidents alleged in this claim. *See County*

*Defendants' Motion* [#226] at 10-11.  I find that the events in the video have limited relevance to the alleged injuries at issue here.  While, as the Court previously noted, the video does reveal a seemingly measured response from County Defendants (at least as it relates to the extraction of Plaintiff from his cell on November 8, 2005), the video does not wholly dispute Plaintiff's contentions regarding what transpired on those days.  Further, the events giving rise to Claim VI were not filmed, and the Court considers the possibility that all parties could behave one way while being filmed and another way while not being filmed.  To be sure, the force described by Plaintiff in relation to this claim can be said to be more excessive than the force described by Plaintiff in relation to claims where the conduct was being filmed.

Further, assuming that County Defendants' vague contentions are enough to shift the burden to Plaintiff,[7] I find that Plaintiff has sufficiently demonstrated a dispute about what occurred on April 16, 2006 and whether it constitutes excessive force.  There is no dispute that the struggle resulted in Plaintiff being injured and that blood from that injury dripped on the floor [Docket No. 227-5 at 8].  Considering the objective component, I find that there is at least a factual dispute as to what level of force the officers exerted.  Moreover, the level of force detailed by Plaintiff is arguably "objectively harmful enough to establish a constitutional violation."  *Smith*, 339 F.3d at 1212.

_____

[7] County Defendants did attach a thirty-page report of the April 18, 2006 incident which contains their version of the events that transpired on that day [Docket No. 227-5].  However, as noted before, where their version is disputed by Plaintiff's affidavit, such dispute raises an issue for trial and may not be appropriate for summary resolution.  *See Great Salt Lake*, 2007 WL 189470, at *3.  To be sure, a jury could ultimately find that County Defendants' version is credible and that their conduct did not amount to excessive force.  But where there is admissible evidence on both sides of the equation, this determination should be reserved for the fact finder.  *See Carey*, 812 F.2d at 623.

Turning to the subjective component of an excessive force claim, namely whether County Defendants' conduct amounted to an unnecessary and wanton infliction of pain, I find that the force detailed by Plaintiff raises a question about the legitimacy of the force exerted. Interpreting Plaintiff's allegations in the light most favorable to him, and considering the four-part test enunciated by the Supreme Court in *Hudson*, namely (1) whether there was a need for force, (2) the amount of force exerted, (3) the perceived threat to the officers, and (4) the officers' attempts to temper the force used, I find that there is a dispute as to the level of force exerted by County Defendants and as to whether County Defendants' conduct amounted to an unnecessary and wilful infliction of pain. *See Hudson*, 503 U.S. at 7.

However, to the extent that Plaintiff asserts an Eighth Amendment challenge to the conditions he endured while in the booking cell, the Court finds that he has failed to articulate sufficient evidence of an Eighth Amendment violation. Plaintiff alleges that he was deprived of a blanket and kept in a cold cell for twenty-eight hours. *Declaration of Kettering* [#308-3] at 7-8. While the evidence is irrefuted that Plaintiff was not given a blanket and that County Defendants knew that the cell was cold and uncomfortable, the record shows that Plaintiff's own conduct contributed to the length of his deprivation [Docket No. 217-18 at 3]. Moreover, while a prolonged deprivation of bedding in combination with extreme temperatures may constitute an Eighth Amendment violation, I find that the present allegations are not "sufficiently grave" to raise such a dispute. *Wilson*, 501 U.S. at 298; *see, e.g.*, *Bridgeforth v. Ramsey*, 198 F.3d 257, 257 (10th Cir. 1999) (holding that the deprivation of bedding for five days did not constitute an Eighth Amendment violation); *Hawkes v. Wyo. Dep't of Corr.*, 124 F.3d 216, 216 (10th Cir. 1997)

(noting that "cold temperatures for a short period of time do not alone necessarily result in a constitutional violation"); *Ogbolu v. McLemore*, 107 F.3d 21, 21 (10th Cir. 1997) (holding that a two-day stay in a drafty cell with water on the floor did not violate the Eighth Amendment); *Mitchell*, 80 F.3d at 1443 (noting that only a deprivation that lasts an extensive period of time, e.g., twelve days, may violate the Eighth Amendment (citing *Gregory v. Wyse*, 512 F.2d at 378, 381-82 (10th Cir. 1975)).

Because I find that the deprivation of a blanket for one day while being kept in a cold cell does not sufficiently raise a factual dispute that Plaintiff was deprived of the minimal necessities of civilized life, I recommend that his general deliberate indifference claim be dismissed. Nevertheless, because I find that Plaintiff has sufficiently raised a dispute about the level of force exerted and whether County Defendants' conduct amounted to excessive force, I recommend that **County Defendants' Motion** be **denied** as to Claim VI.

### 7. Claim X: Placement in Booking Cells for Prolonged Periods (Eighth Amendment)

County Defendants contend that summary judgment should be granted in their favor as to Claim X because Plaintiff fails to state a constitutional claim. Plaintiff does not directly address this claim and, rather, lumps his analysis of Claim X in with his analysis of Claims IV and V, i.e., confinement in a restraint chair in a booking cell in November 2005. Because I find that County Defendants have satisfied their initial burden of demonstrating the absence of independent evidence to support this claim, and because Plaintiff did not specifically address any allegations and evidence in relation to this claim, I find that Plaintiff has failed to sufficiently demonstrate a genuine dispute about a material factual issue. To the extent that Claim X seeks to challenge Plaintiff's nineteen-hour confinement in a

booking cell set forth in Claim IV(a), his four to five day confinement in a safety cell set forth in Claim IV(c), his four to five hour confinement in a booking cell set forth in Claim V, or his twenty-eight-hour confinement in a booking cell set forth in Claim VI, the Court finds that Claim X is duplicative of those claims and is adequately addressed elsewhere. Therefore, I recommend that **County Defendants' Motion** be **granted** as to Claim X, and that Claim X be dismissed.

### 8. Claim XII: Municipal Liability of Defendant Larimer County Detention Center

Although not clear from Plaintiff's complaint, the parties interpret Claim XII as one asserting municipal liability against Defendant LCDC for the conduct of its employees, particularly in relation to Plaintiff's alleged serious dental needs. County Defendants also address this claim regarding Defendant LCDC's liability for any of Plaintiff's claims generally. *County Defendants' Motion* [#226] at 15-16. On its face, Claim XII does not appear to be that broad, but Plaintiff does not provide the Court further guidance as to its breadth. Because it is most efficient to address whether Defendant LCDC has liability as to all claims asserted by Plaintiff, the Court addresses Claim XII as construed by County Defendants.

County Defendants contend that because Plaintiff has failed to provide evidence of any constitutional violations, municipal liability cannot be imposed upon Defendants LCDC and the Larimer County Sheriff for any of Plaintiff's claims. *Id.* at 15; *Reply* [#314] at 8. However, the Court finds that Plaintiff has sufficiently alleged several constitutional violations and, therefore, rejects County Defendants' preliminary contention. County Defendants next argue that "Plaintiff's claim is fatally deficient in that it does not identify any

specific policy or custom that such alleged conduct flowed from, nor that the Larimer County Sheriff himself engaged in any of the alleged conduct." *Reply* [#314] at 8-9. Instead, County Defendants contend that Plaintiff seeks to hold Defendant LCDC liable based solely upon the actions of its employees. *Id.*

In Plaintiff's response, he recognizes that municipal liability generally results from the execution of a policy or custom, but fails to put forth any specific policy or custom allegedly violated here. Rather, he argues that Defendant "LCDC was deliberately indifferent to Plaintiff's constitutional rights" by allowing its employees (1) to deprive Plaintiff of "nourishment or life necessities," (2) to deprive Plaintiff of adequate medical care, and (3) "to use excessive force in a malicious and sadistic manner." *Response* [#308] at 30-32. Plaintiff claims Defendant LCDC was on notice of its employees' conduct, "[b]ut LCDC chose to ignore it. Because Plaintiff's grievances put LCDC on direct notice that Plaintiff was being deprived of his constitutional rights, a reasonable jury could infer that LCDC acquiesced to the constitutional violations occurring at the detention center, and that they resulted from official or unofficial LCDC polices or customs." *Id.* at 31-32.

Because there is no evidence of an actual policy that authorizes the constitutional violations that occurred here, the Court interprets the heart of Plaintiff's contention to be that municipal liability is based upon a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes*, 398 U.S. at 167-68). Specifically, Plaintiff alleges that Defendant LCDC was deliberately indifferent to his constitutional rights by its failure to adopt policies necessary to prevent the constitutional violations. *See Barney v. Pulsipher*, 143 F.3d 1299,

1307-08 (10th Cir. 1998); *see also Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (holding that custom of inaction could establish municipal liability). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. Notice can be established via "a pattern of tortious conduct" or if the violation is a "highly predictable" or "plainly obvious" result of the municipality's conduct or failure to act. *Id.*

Here, Plaintiff contends in his response that he "contacted the sheriff's office directly to notify it of the violations that had occurred." *Response* [#308] at 31. In support of his response, Plaintiff's affidavit claims that "he repeatedly notified the LCDC and its employees about my dental problems, that I was in significant pain, that I believed I had an oral infection, and that I needed root canals and new veneers on my teeth." *Declaration of Kettering* [#308-3] at 2. Plaintiff also attached a letter he sent to Sheriff Alderdeen about his treatment by staff at the LCDC, including staff's continuing failure to give him proper dental care and their ongoing use of excessive force and alleged tortious conduct [Docket Nos. 308-25]. However, I find that these contentions do not go far enough to raise a genuine dispute of material fact as to Defendant LCDC's liability.

In the first instance, the Court has already determined that Plaintiff failed to assert a constitutional injury in relation to his dental needs generally. As to the remaining claims of excessive force or deliberate indifference, the Court finds that Plaintiff has failed to put forth sufficient evidence (via one letter sent to the Sheriff on November 27, 2005) that Defendant LCDC was on "actual or constructive notice" that its failure to act was "substantially certain

to result in a constitutional violation." *See Barney*, 143 F.3d at 1307. Moreover, Plaintiff's description of four instances of conduct which he alleges violated his constitutional rights does not sufficiently evidence a pattern of conduct that could be said to be so plainly obvious to Defendant LCDC that it should have taken actions via training or new policies to prevent such conduct. Even reading Plaintiff's claim liberally, the focus of the claim is on the conduct of Defendant LCDC's employees, and not the conduct of the municipality. This is simply not enough. *See id.* In the absence of allegations about the conduct of the municipality itself, Plaintiff has failed to provide a sufficient "causal link" between any conduct committed by Defendant LCDC and his alleged constitutional injuries. *See id.* (noting that a municipality cannot be held liable merely on the basis of the conduct of its employees). Because "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee," the Court concludes that Plaintiff's allegations are insufficient. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

Because I find that Plaintiff has not sufficiently raised a material factual dispute about Defendant LCDC's actual or constructive knowledge of his injuries, the pattern of behavior exhibited by County Defendants or its "plainly obvious" unconstitutional nature, or Defendant LCDC's failure to prevent such injuries from occurring, I recommend that **County Defendants' Motion** be **granted** as to Claim XII.

### 9. Qualified Immunity

County Defendants contend that to the extent that Plaintiff has shown the possibility that constitutional violations occurred, they are nevertheless protected from prosecution

pursuant to the doctrine of qualified immunity. *County Defendants' Motion* [#226] at 16-17.

Qualified immunity, in certain circumstances, protects government officials from litigation when sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814–18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

"[W]hen a defendant raises qualified immunity, the burden shifts to the plaintiff to establish" that immunity does not bar his claims. *Guffrey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). A court analyzing a qualified immunity defense applies a two-part test. *See, e.g.*, *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir. 1999). First, the court determines whether the plaintiff has sufficiently alleged a deprivation of a constitutional right. *Id.* (internal citation omitted). If this question is answered in the affirmative, the court then determines whether the right was "clearly established." *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver* 960 F.2d 1493, 1498 (10th Cir. 1992) (internal citation omitted).

Here, the Court has already found that Plaintiff has tendered sufficient evidence of constitutional violations in relation to Claims III, IV(a), IV(c), V & VI. As such, in order to be entitled to qualified immunity, County Defendants' conduct must not have run afoul of clearly established law. The Court finds that County Defendants are not entitled to qualified immunity based upon the disputed facts in evidence here. The law is clearly established that the use of excessive force or deprivation of humane conditions do, in certain

53

circumstances, violate an inmate's constitutional rights. *See generally Hudson*, 503 U.S. at 5; *DeSpain*, 264 F.3d at 974-75.[8] Accordingly, viewing the evidence in the light most favorable to Plaintiff, the doctrine of qualified immunity does not bar Plaintiff's remaining claims against County Defendants.

## V. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that (1) Nurses Hoffman and Hauge's Motion be **GRANTED**; (2) Nurse Bruntz's Motion be **GRANTED**; and (3) County Defendants' Motion be **GRANTED in part and DENIED in part**.

The Court summarizes its Recommendation as follows:

(4) Defendants LCDC, Nurse Bruntz, Nurse Hoffman, Nurse Hauge, Russell, Hooper, Sanzone, Daniels, Gregory, Traylor, Cates, Vanderslice and Unknown Nurses be dismissed;

(5) Claims II(a), II(b), IV(b), X & XII be dismissed; and

(6) Claims III, IV(a), IV(c), V & VI proceed as discussed as against Defendants Burgess, Harris, Esters, Nail, Kerr, Sims, Meeks, Moll, Farabee, Vanfleet, Harteker, Pugliese, Martinez, Santos Romero, Armentrout, Somoyer, McHugh, Purrier, Kiahtipes and Darling.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A

---

[8] To the extent that Plaintiff argues that Nurses Bruntz, Hoffman and Hauge are not entitled to qualified immunity because they are independent contractors, the Court does not address this contention because the Court finds that the claims asserted against these Defendants should be dismissed due to Plaintiff's failure to exhaust the claims asserted against them.

party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: September 2, 2008

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix