**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 06-cv-01989-CMA-KLM

CHARLES LEE KETTERING,

      Plaintiff,

v.

DEPUTY GREGORY HARRIS, in his individual and official capacity,
SERGEANT MICHAEL ESTERS, in his individual and official capacity,
DEPUTY CLYDE MEEKS, in his individual and official capacity,
DEPUTY ROBERT MOLL, in his individual and official capacity,
SERGEANT JEFFREY VANFLEET, in his individual and official capacity,
CORPORAL JOHN HARTEKER, in his individual and official capacity,
DEPUTY JOSEPH PUGLIESE, in his individual and official capacity,
DEPUTY CANDIDO MARTINEZ, in his individual and official capacity,
DEPUTY SANTOS ROMERO, in his individual and official capacity
DEPUTY JEFFREY ARMENTROUT, in his individual and official capacity,
DEPUTY AARON SMOYER, in his individual and official capacity,
DEPUTY THERESA MCHUGH, in her individual and official capacity,
DEPUTY RHETT PURRIER, in his individual and official capacity,

      Defendants.

---

## ORDER

---

      This matter is before the Court on Defendant Michael Esters' ("Sergeant Esters")

Motion to Alter or Amend the Judgment Pursuant to Fed.R.Civ.P. 59(e) and Larimer

County Defendants' Rule 54 Motion for Attorneys' Fees and Costs.  (Doc. ## 361, 363).

For the reasons stated below, both motions are denied.

## I.  FACTS

      The facts are detailed in the Court's Findings of Fact and Conclusions of Law

(hereafter "FOF/COL").  (Doc. # 359.)  Thus, instead of repeating them here, the Court

will refer to the relevant portions of the FOF/COL.  However, to provide a basic orientation, a short recap of the facts follows.

Plaintiff Charles Lee Kettering ("Plaintiff") is a prisoner who sued Defendants for violation of his Eighth Amendment rights, alleging they subjected him to cruel and unusual punishment by using excessive force and by subjecting him to inhumane conditions of confinement.  (Doc. # 4.)

After a trial before this Court, Plaintiff won a judgment against Sergeant Esters, a supervisor, in the amount of $10,000.00, for Sergeant Esters' role in depriving Plaintiff of constitutionally adequate conditions of confinement.  (Doc. # 359 at 42-48.) Specifically, the Court found that with respect to Plaintiff's Claim IV, which alleged constitutional violations arising from an assault on Plaintiff and subsequent confinement, Sergeant Esters "personally participated in the provision of unconstitutional conditions of confinement in both the emergency restraint chair and the safety cell." (*Id.* at 48.) The Court also found that Sergeant Esters "acted with deliberate indifference in the provision of such conditions because the risk to Plaintiff's health was obvious."  *Id.*

On March 9, 2009, Sergeant Esters filed his Motion to Alter or Amend Judgment Pursuant to Fed.R.Civ.P 59(e), arguing there is insufficient evidence to sustain the judgment and that he was never given notice of the "supervisory liability" claim. (Doc. # 361.)  Plaintiff responded on March 30, 2009 (Doc. # 364) and Sergeant Esters replied on April 8, 2009.  (Doc. # 366.)

On March 17, 2009, Defendants filed their Larimer County Defendants' Rule 54 Motion for Attorneys' Fees and Costs, arguing they are entitled to attorneys' fees and costs because Plaintiff's claims were either frivolous, unreasonable, or groundless. (Doc. # 363.)  Plaintiff responded on April 6, 2009 (Doc. # 365), to which Defendants replied on April 20, 2009.  (Doc. # 367.)

## II.  ANALYSIS

The Court first considers Sergeant Esters' motion under Rule 59 then addresses Defendants' motion for fees and costs.

### A.    Rule 59(e) Motion to Alter or Amend Judgment

#### 1.    Standard of Review

Sergeant Esters brings his motion to alter or amend the judgment pursuant to Rule 59(e).  "Relief under Rule 59(e) should only be granted due to an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice."  *Figueroa v. American Bankers Ins. Co. of Florida*, 517 F.Supp.2d 1266, 1270 (D. Colo. 2006) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *See also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (Motion to alter or amend judgment should be granted only to correct manifest errors of law or to present newly discovered evidence).

"Such a motion is appropriate where the Court has allegedly misapprehended the facts, a party's position, or the controlling law."  *Id.*  In contrast, "[i]t is not appropriate to

revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012.

    2.   <u>Evaluation</u>

Sergeant Esters cites two reasons why the judgment against him should be dismissed with prejudice. First, he argues there is insufficient evidence to support a claim against him, and, second, that he was never given notice of Plaintiff's claim of supervisory liability.

    *a.   Insufficient Evidence*

Sergeant Esters ignores the larger question of whether Plaintiff's Eighth Amendment rights were violated, instead focusing on whether, assuming they were, there is sufficient evidence to find him personally liable for that violation. Thus, the Court's inquiry is limited to determining, in light of the standard of review, whether there is sufficient basis to ascribe any liability arising from Plaintiff's conditions of confinement to this defendant, the supervisor Sergeant Esters.

Sergeant Esters argues there is a "total lack" of evidence showing that he actually supervised the offending conditions of confinement. (Doc. # 361 at 2-3.) Citing to *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146 (10th Cir. 2006) for support, he argues that, because his subordinates were exonerated, a judgment against him, as their supervisor, is precluded. (Doc. # 361 at 3-5.)

It is true, as Sergeant Esters points out, that under 42 U.S.C. § 1983 a supervisor cannot be held vicariously liable for the acts of his subordinates. *Serna*, 455 F.3d at

1151.  Plaintiff does not dispute this.  (Doc. # 364 at 4.)  However, as Plaintiff points out, supervisors *can* be held directly, as opposed to vicariously, liable for their own behavior. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  For that to happen, however, there must be a causal connection, or affirmative link, between the supervisor and the constitutional violation.  *Serna*, 455 F.3d at 1151.  The most obvious example of a causal connection is a case where the supervisor personally participates in violating the plaintiff's rights.  *See Fogarty*, 523 F.3d 1147.

The parties disagree as to the basis on which Sergeant Esters was found liable and, because of that, what area of law controls.  Sergeant Esters argues *Serna* is controlling because the claim against him was one of "supervisory liability."  (*See* Doc. # 361.)  Plaintiff disagrees, arguing that Sergeant Esters was found liable not in his capacity as supervisor but rather for his direct role in the constitutional violation; thus, *Serna*, which applies to claims of supervisory liability, is inapplicable.  (Doc. # 364 at 4.)

The *Serna* court began its discussion of supervisory liability by announcing that "[s]upervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."  *Serna*, 455 F.3d at 1151.  The court then illustrated this principle in the context of supervisors being held accountable for the acts of their subordinates.  Since there is no concept of supervisor strict liability under § 1983, a supervisor can be held liable for the unconstitutional acts of his subordinates only if the plaintiff proves: (1) that the subordinates violated the Constitution, *i.e.*, excessive force was used; (2) an affirmative link exists between the supervisor and

5

the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates; and (3) that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur.  *Id.*

Plaintiff distinguishes *Serna* on two grounds.  First, he argues *Serna* is inapplicable because this is a case involving a supervisor's direct, not vicarious, liability.  (Doc. # 364 at 4.)  Second, Plaintiff argues that Sergeant Esters misreads *Serna* in characterizing its holding as requiring subordinates to act unconstitutionally before a supervisor can be held liable; this is incorrect because it suggests that a supervisor cannot be held liable for his own unconstitutional acts.  (*Id.* at 5.)  The Court agrees with Plaintiff.  Only where a supervisor is to be held liable solely for the unconstitutional acts of his subordinates does *Serna* suggest that proof of the subordinates' constitutional violations is necessary.  *See Serna*, 455 F.3d at 1151.

As discussed in *Fogarty*, there are at least two other methods, aside from looking to subordinates' behavior, by which supervisors can be liable under §1983.  *Fogarty*, 523 F.3d at 1162.  As mentioned, the most obvious is a case where the supervisor is personally involved, *i.e.*, assists in the alleged offense itself.  *Id.*  A supervisor can also be liable for failing to intervene when a colleague violates a person's rights.  *Id.*  The common thread through these differing modes of liability is two-fold; first, the supervisor must somehow be personally involved in the constitutional violation and, second, there must exist a sufficient causal connection between the supervisor's involvement and the constitutional violation.  *Serna*, 455 F.3d at 1151.

6

In the instant case, the Court found the following facts and concluded they were sufficient to establish Sergeant Esters' personal liability to Plaintiff.  Sergeant Esters authorized and physically assisted Plaintiff's extended confinement to the emergency restraint chair ("ERC").  He did this while aware of the substantial risk of serious harm posed to Plaintiff by (1) "his inability to stretch or significantly move for approximately eighteen and one half hours"; (2) his "inability to use a toilet during this same period"; (3) "the burning of pepper ball chemicals on plaintiff's skin, . . . deprivation of food until 7:14 a.m."; and (4) "the deprivation of a toilet [and sink] for forty-four hours . . . , and sleeping in close proximity to [his] own feces . . for an indeterminate period of time." (Doc. # 359 at 43-47.)  From these facts the Court found that there existed an "affirmative link" between Sergeant Esters' actions, his state of mind, and the objectively unconstitutional conditions of confinement.  *Serna*, 455 F.3d at 1151.

The evidence at trial supported these findings.  First, there is the LCDC policy on the use of force and restraints, which was admitted into evidence and about which Sergeant Esters testified.  It reads, in part, that "[a]t least every two hours the inmate will be allowed to use the toilet facilities, to consume water and be allowed to stretch and walk for 5 to 10 minutes."  It also states that "[n]o inmate will be placed in the [emergency restraint chair] for more than two continuous hours without documentation from both the shift supervisor and the on-duty nurse detailing the need for this action." Sergeant Esters was asked whether there was documentation showing that the shift supervisor had in fact detailed the need to keep Plaintiff restrained for more than two

continuous hours.  He answered, "[n]o," before admitting he was the responsible shift supervisor. (Doc. # 357 at 85:19-22, 86:7-12, 87: 5-13; Doc. # 308, Ex. 5 at 3-4.)

Sergeant Esters also testified that, though he was not personally checking on Plaintiff's status, he was being "advised from time to time."  Thus, he knew Plaintiff had not been offered water, nor given the chance to stretch or use the bathroom.  He knew this, in part, because allowing Plaintiff to leave the chair would have been a "major incident" for which he would have been advised.  After four hours of this, Sergeant Esters' shift concluded, at which time he advised an LCDC lieutenant of Plaintiff's status and received from his superior authorization to keep Plaintiff in the ERC.  If not for Sergeant Esters' description of Plaintiff's status, *i.e,* that Plaintiff still represented a "viable threat," it can be assumed Sergeant Esters would not have received the authorization to keep Plaintiff restrained.  (Doc. # 357 at 77:13-24, 78:1-17, 80:4-25, 84:10-21, 86:7-12, 87:5-13, 89:22-25, 92:7-14.)

Thus, the evidence at trial showed that Sergeant Esters personally participated in restraining Plaintiff to the ERC, in directing or acquiescing to Plaintiff's continued restraint, and in placing Plaintiff in the safety cell.  As the shift supervisor, per the policies, Sergeant Esters was the one responsible for ensuring that no inmate be placed in the ERC for more than two hours continually.  By his own testimony, he failed to meet his responsibility both during the time he was at work on November 8, 2005, during which Plaintiff was in the ERC for four hours, and when he returned the next day at 6:00 a.m., at which time Sergeant Esters knew Plaintiff had been in the chair

8

continuously for over 16 hours, and yet, despite this knowledge, allowed an additional 2.5 hours to pass before moving Plaintiff to the safety cell.  (Doc. # 357 at 86:7-11, 87:5-13, 95:6-13, 96:19-22.)

Despite the evidence and the Court's findings, Sergeant Esters persists in arguing that because "the Court unmistakably found that Sergeant Esters was liable to the [p]laintiff as a supervisor . . . Plaintiff's argument . . . that the Court found that Esters personally participated is wrong."  (Doc. # 366 at 2.)  First of all, the two are not mutually exclusive.  A supervisor can be held liable under section 1983 for personally participating in a constitutional violation *as a supervisor.  See Fogarty*, 523 F.3d at 1162.  Because one is labeled a supervisor does not mean he cannot, by virtue of his job title, become personally involved in a constitutional violation.  Here, as recited above, the Court found facts establishing Esters' personal liability because of his direct involvement in violating Plaintiff's rights.  (Doc. # 359 at 48.)  Second, despite Sergeant Esters' protestations to the contrary, the Court expressly states on page 48 of the FOF/COL that it "finds that Sergeant Esters *personally participated* in the provision of unconstitutional conditions of confinement . . . ."  *Id.*  Because he was found to have personally participated, a discussion of Sergeant Esters' vicarious liability is irrelevant.

In sum, the Court found Sergeant Esters liable because he personally participated in depriving Plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment.  Sergeant Esters has failed to show that the Court

misapprehended the controlling law.  He has also failed to show the presence of manifest injustice or clear error.

> b.  *Improper Pleading*

Sergeant Esters also argues that the judgment against him should be dismissed because he was never given notice of a claim of supervisory liability.  Given the Court's affirmation in section (a) that Sergeant Esters was found liable to Plaintiff not as a supervisor but for his direct involvement in violating Plaintiff's rights, a discussion regarding whether Esters had notice of a "supervisory liability" claim is unwarranted. The Court finds that Esters had sufficient notice of the claims against him.

**B.    Rule 54(d)(2) Motion for Attorneys' Fees and Costs**

Defendants seek $88,616.00 in attorneys' fees and $828.94 in costs, pursuant to Fed.R.Civ.P 54(d)(2) and 42 U.S.C. § 1988.

1.    <u>Standard of Review</u>

As stated in *Christianberg Garment Co., v EEOC.* 434 U.S. 412, 415-418 (1978), in the absence of legislation providing otherwise, litigants generally must pay their own attorney's fees.  However, 42 U.S.C. § 1988 authorizes the award of attorneys' fees to the prevailing party.  Under that section, a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances.  *Id*; *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1203 (10th Cir. 2000).  The rationale for this interpretation is that such an award is justified because it is levied against a defendant who has violated federal law.  *Christianberg Garment Co.*, 434 U.S. at 418.

The standard for awarding fees to a prevailing defendant is more stringent, however, because the policy considerations that support an award of fees to a prevailing plaintiff are absent in the case of a prevailing defendant. *Id.* Thus, a defendant is entitled to attorneys' fees only if a court finds that the plaintiff's claims are "frivolous, unreasonable, or without foundation." *Browder v. City of Moab*, 427 F.3d 717, 721 (10th Cir. 2005) (citing *Christianberg Garment Co.,* 434 U.S. at 422).

This standard is not easily met. As the Tenth Circuit described in *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1203 (10th Cir. 2000): "a prevailing defendant in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought to harass or embarrass the defendant . . . rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff."

2.    Evaluation

Defendants argue they are entitled to attorneys' fees and costs because Plaintiff's claims were "frivolous, unreasonable, or groundless." The Court disagrees.

Many of Plaintiff's claims survived motions for summary judgment. (Doc. ## 317, 326.) That survival is significant because summary judgment would have been granted if there existed no genuine issues of material fact. A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). If there exists a genuine dispute as to a material fact, a trial is required. Here, a trial did in fact

11

take place, after which Plaintiff prevailed on one of his claims.  This procedural history, a trial on the merits after first finding that Plaintiff's claims presented evidence so contradictory that a reasonable jury could return a verdict for either party, strongly suggests that Plaintiff's claims were not frivolous.  Rather, it suggests they were brought to vindicate what Plaintiff felt were violations of his constitutional rights.

In attempting to portray Plaintiff's claims as frivolous, Defendants resort to criminal accusations.  In particular, Defendants interpret the Court's credibility determinations of Plaintiff as tantamount to a perjury conviction.  "The Court's Order diplomatically explains that much of Plaintiff's testimony throughout the trial was not credible.  In other words, Plaintiff lied under oath . . . Plaintiff intentionally and repeatedly perjured himself in this case, and therefore an award of attorneys' fees and costs in favor of Defendant is warranted."  (Doc. # 363 at 3.)

It should go without saying that credibility determinations are judgment calls, usually made by the jury but in this case by the judge, based upon many factors.  As the Court's stock jury instructions on credibility reads, in resolving disparate stories and determining facts, "the test . . . is which witness or witnesses, and which evidence, appeals to your minds as being most accurate, believable, and otherwise trustworthy." Other factors include the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have

12

contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence.  It is true that, after considering the above factors, the Court discredited some of Plaintiff's testimony.  But for Defendants to then draw from that the conclusion that Plaintiff perjured himself is untenable.

Perjury is a federal crime, as evidenced by its codification at 18 U.S.C. § 1623. It is punishable by fines and/or imprisonment.  And like other crimes, the United States Constitution requires that each of its elements be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361-62 (1970).  In sum, the Court admonishes Defendants for this cavalier line of argument and advises against its use in the future.

Defendants motion for attorneys' fees fails because, quite simply, they have not satisfied the "difficult standard" in showing Plaintiff's claims were frivolous.  *See Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004).  Defendants' argument, based solely on the Court's credibility determination, is not persuasive.

### III.  CONCLUSION

Based on the foregoing, the Court ORDERS:

1.      That Defendant Michael Esters' Motion to Alter or Amend the Judgment (Doc. # 361) is DENIED.

2.      That Defendants' Rule 54 Motion for Attorneys' Fees and Costs (Doc. # 363) is DENIED.

DATED:  June 18, 2009                    BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge